

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 30, 2020

**BY ECF**

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    **United States v. Ramon Ramirez,**
              **S1 19 Cr. 395 (PKC)**

Dear Judge Castel:

      The Government respectfully submits this letter in opposition to defendant Ramon Ramirez's renewed bail application. (Dkt. No. 67, "Mot."). Ramirez plotted the murder of a man believed to be having an affair with Ramirez's wife. As a result, Ramirez is charged with murder-for-hire and conspiracy to commit murder-for-hire, in violation of 18 U.S.C. §§ 1958 and 2. On July 26, 2019, this Court ordered Ramirez detained as a danger to the community and a flight risk.

      Ramirez now argues for pretrial release on three grounds: *first*, he seeks to reopen his bail hearing under 18 U.S.C. § 3142(f) on the grounds that the Court should discount the proffered testimony of the Government's two cooperating witnesses because they pled guilty to an unrelated murder; *second*, he claims that the existence of COVID-19-positive inmates at MCC is a "compelling reason" for release under 18 U.S.C. § 3142(i); and *third*, he argues that the current limitations on attorney visits to MCC make release necessary under § 3142(i) in order to prepare for trial. For the reasons detailed below, none of these arguments has merit. Accordingly, the Court should decline to reopen the prior bail hearing and the existing detention order should continue.

**I. Background**

      The above-referenced Indictment charges Ramon Ramirez and his co-defendant Vance Collins with murder-for-hire and conspiracy to commit murder-for-hire, in violation of 18 U.S.C. §§ 1958 and 2. The charges stem from Ramirez's hiring of Collins to kill a man Ramirez believed was having an affair with Ramirez's wife (the "victim"). Collins, a leader in the Piru Bloods, in turn hired a subordinate in the gang to carry out the murder ("CW-1"). CW-1 in turn recruited a second individual to assist in the murder ("CW-2").

      Ramirez and Collins were arrested on June 13, 2019. Ramirez gave a mirandized, videotaped post-arrest statement in which he admitted to, *inter alia*: learning about his wife's affair

and becoming so upset that the police had to be called; placing a GPS tracker on his wife's car and following her to the victim's home; asking Collins, whom he knew to have a criminal background, to harm the victim over the affair; knowing that Collins in turn asked one or two other people, including CW-1, to carry this out; knowing that these persons also had criminal backgrounds, including past acts of violence; providing Collins with photos and addresses of the victim in order to assist in tracking the victim down; seeing a gun at Collins's home; and giving Collins $2,000 to be paid to the men who would carry out the plot.

The parties appeared before the Court for an initial bail hearing on July 26, 2019. The Court ordered Ramirez detained both on risk of flight and dangerousness grounds. (7/26/19 Tr. 16:6-24.) Ramirez has been detained since.

Trial in this matter was initially set to commence on April 6, 2020. However, trial was adjourned to May 4, 2020 as a result of COVID-19. On March 27, 2019, all trials in this District were adjourned through June 1, 2020.

## II. Applicable Law

Pursuant to 18 U.S.C. § 3142(f), in order to reopen a bail hearing once a defendant has been ordered detained, the defendant must make a two-part showing: *first*, that he has come into possession of information that was not known to him at the time of the original hearing, and *second*, that that information "has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). A hearing will therefore not be reopened based on evidence available to the defendant at the time of the initial hearing. *United States v. Lewis*, 2016 WL 6902198, at *2 (S.D.N.Y. Nov. 16, 2016) (citing *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989)); *see also United States v. Banks*, 334 F. Supp. 3d 589, 590-91 (S.D.N.Y. 2018) (denying motion to reopen bail hearing where the defendant relied on arguments that either were, or could have been, raised at prior bail hearing). Moreover, even if the defendant does identify newly discovered evidence, a hearing will not be reopened unless that evidence would alter the balance of the § 3142(g) factors. *United States v. Schwamborn*, 249 F. App'x 906, 907 (2d Cir. 2007); *United States v. Hunter*, 2014 WL 6632965, at *2 (S.D.N.Y. Nov. 24, 2014) ("A court may properly reject an attempt to reopen a detention hearing where the new information presented is immaterial to the issue of flight risk or danger to the community." (citing *Hare*, 873 F.2d at 799)). Those factors are: "(1) the nature and circumstances of the offense charged, including whether the offense . . . involves . . . a . . . firearm . . .; (2) the weight of the evidence against the person; (3) the history and characteristics of the person . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g). Ultimately, detention must continue if "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

Separately, pursuant to 18 U.S.C. § 3142(i), a defendant may seek temporary pretrial release after having been ordered detained if he demonstrates that release is "necessary for preparation of the person's defense or for another compelling reason." 18 U.S.C. § 3142(i).

**III. Discussion**

The Court should deny Ramirez's motion under § 3142(f) because Ramirez has not identified new information that alters the balance of the § 3142(g) factors, and should deny Ramirez's motion under § 3142(i) because COVID-19, standing alone, is not a "compelling reason" for release and because Ramirez's release is not necessary for, and indeed will not facilitate, the preparation of his defense.

**1. Ramirez Has Not Demonstrated a Basis to Reopen His Bail Hearing**

As an initial matter, Ramirez's argument for reopening his bail hearing under § 3142(f) is limited to a claim about a single § 3142(g) factor: the weight of the evidence. (Mot. 5.) Ramirez has cited no "new information" that bears on any of the other § 3142(g) factors. For the reasons articulated by the Government at the initial bail hearing, each of those factors continues to weigh in favor of detention. (*See* 7/26/19 Tr. 7:25—12:1.) The Government does not repeat its arguments in detail here, but notes that the following remains true:

- A grand jury indicted Ramirez (twice) for a deadly serious offense—hiring someone to commit murder. As part of the plot, a gun was obtained, making this an offense that "involves a firearm," § 3142(g)(1).

- Even putting aside the charged murder-for-hire plot, Ramirez is violent. His wife had to obtain an order of protection against him. And even under Ramirez's own telling, when he learned about his wife's affair, he tracked her to the victim's home using a GPS device and then hired violent men to cause the victim serious physical harm, plotting with them over many months and providing them with photographs, addresses, and money in order to carry out the attack. (If released, Ramirez proposes to live with his wife—a fact that previously caused the Court concern. (7/26/19 Tr. 16:10-19.))

- Ramirez has the means to flee as a Nicaraguan citizen with assets.

Turning to the only contested factor—the weight of the evidence—it too continues to favor detention. In urging a contrary conclusion, Ramirez cites the fact that as part of their cooperation, CW-1 and CW-2 pled guilty to an unrelated murder. (Mot. 5.) Ramirez's argument is essentially as follows: the only evidence that this was a plot to kill the victim is the testimony of CW-1 and CW-2, and the Court should discount that testimony entirely because as part of their cooperation agreements, CW-1 and CW-2 pled guilty to murder. (*Id.*) This argument is little more than a thinly-veiled effort to have the Government lay out its trial evidence, and is as preposterous as it sounds.

*First*, the Court should reject Ramirez's attempt to lump CW-1 and CW-2 together as if they are a single source of evidence, when in fact they are two independent witnesses who corroborate one another. CW-1 and CW-2 were arrested months apart, on entirely different charges (CW-1 in November 2018 on a triggerlock, and CW-2 in December 2018 on murder). As part of their respective cooperation, they each provided significant information about a host of serious crimes—not just the murder-for-hire plot. And most importantly, with respect to that plot, they independently gave accounts that are corroborative of one another. For example, both CW-1

and CW-2 will testify that they were hired to kill the victim because of the affair; that the man who wanted the murder carried out provided them with photos and addresses to help them track down the victim; that a gun was obtained for the specific purpose of killing the victim; and that CW-1 and CW-2 travelled to the victim's residence together in an effort to lure the victim out and kill him, but that this mission was not successful. Ramirez ignores not only the fact that CW-1's and CW-2's testimony is mutually corroborative, but also the improbability and impracticability of both witnesses lying about the purpose of their being hired. That omission is particularly glaring given the Court's initial determination that the existence of more than one cooperating witness reinforces the strength of the evidence. (*See* 7/26/19 Tr. 15:21—16:5.) Ramirez's so-called "new evidence" has not changed the foundation of that conclusion.

*Second*, Ramirez's attempt to minimize CW-1's and CW-2's testimony ignores the ample corroborating evidence in this case.[1] For example, there is cell site showing, *inter alia*, meetings between CW-1, Collins, and Ramirez, as well as CW-1 and CW-2's trips out to the victim's residence. There are toll records and text messages showing the relationship between co-conspirators. There is video showing CW-1 and CW-2 conducting surveillance of the victim's residence. And of course there is Ramirez's own post-arrest statement, in which he admits to, *inter alia*, hiring Collins to harm the victim; knowing not only that Collins had a criminal past, but that the persons whom Collins had tasked with the job had violent histories; providing photos and addresses to aid in the hunt for the victim; and seeing Collins with a gun in his home.

*Finally*, the Court should reject Ramirez's argument because its logical consequence—that a court must always discount entirely the testimony of cooperating witnesses since they cooperate out of self-interest—is overly simplistic and contrary to both law and common sense. Of course, all cooperating witnesses choose to cooperate, at least in part, out of self-interest—they are hoping to serve less time in prison. But as this Court has instructed countless juries, that is but one factor in determining those witnesses' credibility. The analysis continues: is their testimony consistent with that of other witnesses and with other evidence in the case? Ramirez is asking the Court to short-circuit that analysis and instead to disregard CW-1 and CW-2 completely, merely because they, like all cooperating witnesses, are cooperating out of self-interest. Particularly in the context of a bail hearing, which is not a full trial, *LaFontaine,* 210 F.3d at 131, Ramirez's approach is unworkable and should be rejected.

In sum, the § 3142(g) factors continue to weigh in favor of detention, even in light of the fact that, as part of their cooperation, CW-1 and CW-2 pled guilty to murder. Accordingly, Ramirez's motion to reopen his bail hearing under § 3142(f) should be denied, and he should remain detained pending trial.

---

[1] This summary does not necessarily include all the evidence the Government intends to present at trial, nor does it delve into every detail, mindful that "bail hearing[s] cannot become a 'mini-trial' or 'a discovery tool for the defendant.'" *United States v. LaFontaine,* 210 F.3d 125, 131 (2d Cir. 2000) (quoting *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986)).

### 2. Ramirez Has Not Demonstrated the Necessity of Release

The Court should also reject Ramirez's motion for bail under § 3142(i). COVID-19, standing alone, is not a "compelling reason," and Ramirez has not demonstrated that release is "necessary for preparation of [his] defense."

To the extent Ramirez is relying on a generic claim about the dangers of COVID-19 without identifying any risk factors that are particular to him, the Court should reject that argument. *See United States v. Marte*, 19 CR 795 (SHS) (rejecting § 3142(i) application where defendant did not have unique risk factors and noting: "It seems to me that, in theory, to release him now, given the fact that I found there's no combination of conditions adequate, . . . means that everyone should be released because of Covid-19."). Indeed, not one of the cases cited by Ramirez involved the release of a previously detained defendant based exclusively on the existence of COVID-19:

- In *United States v. Raihan*, 20 Cr. 68 (BMC), the defendant was newly arrested and there was a concern about the defendant carrying the virus into a detention facility. Ramirez is already detained, making *Raihan* inapposite.

- In *United States v. Hudson*, 19 Cr. 496 (CM), the defendant had a serious, underlying medical condition that placed him at particular risk. Similarly, in *United States v. Perez*, 19-CR-297 (PAE), the defendant suffered from serious, progressive lung disease and other significant health issues. Likewise, in *United States v. Santiago Ramos*, 20 Cr. 04 (ER) the defendant was HIV-positive. No such risk factors have been identified with respect to Ramirez.

- In *United States v. Stephens*, 15 Cr. 95 (AJN), the court held that the prior determination of the defendant's dangerousness was undermined by new evidence, independently warranting release on bail. For the reasons already stated, the § 3142(g) factors continue to weigh in favor of Ramirez's detention.

To the extent Ramirez is instead arguing that release is necessary because the measures taken by BOP to combat the spread of COVID-19 make it too difficult to prepare for trial, that argument should also be rejected. *First*, Ramirez can maintain contact with his counsel even under current restrictions. The Government does not dispute that in-person meetings with defense counsel have been temporarily suspended at MCC. However, BOP is making every effort to facilitate phone calls between inmates and their counsel, and email remains available to inmates at MCC. *Second*, the press of a May trial date is no longer of concern; subsequent to the filing of Ramirez's motion, a standing order was entered by the Chief Judge suspending all jury trial until June 1, 2020. The Government would certainly consent to the setting of a trial date that provides sufficient time for MCC to restore attorney visits such that the defendants can confer with their counsel in-person.[2] *Third*, Ramirez's release would not, in any event, facilitate such in-person

---

[2] To the extent Ramirez suggests that such an adjournment would violate his Sixth Amendment right to a speedy trial, he is wrong given that it has not yet even been 12 months since he was arrested. *See, e.g.*, *United States v. Vasquez*, 918 F.2d 329, 338 (2d Cir. 1990) (holding that delay of 26 months in simple narcotics conspiracy case was not a Sixth Amendment violation and citing *United States v. McGrath,* 622 F.2d 36, 41 (2d Cir. 1980) for the proposition that

meetings. The Government is informed by defense counsel that Ramirez's wife has exhibited symptoms of COVID-19. It is unknown whether she has been tested. Regardless, if Ramirez were to be released to that home, not only would his release potentially expose him to COVID-19, but it would require Ramirez to avoid contact with others even beyond the existing orders limiting travel and contact amongst individuals. Indeed, it is difficult to see how in-person meetings with counsel could proceed under current circumstances, even without the added risk of infection from Ramirez's wife.

In sum, Ramirez has not demonstrated that he is entitled to release under § 3142(i).

**IV.  Conclusion**

For the forgoing reasons, Ramirez's motion should be denied, and he should remain detained pending trial.

        Respectfully submitted,

        GEOFFREY S. BERMAN
        United States Attorney


by: _____/s/_____
    Celia V. Cohen
    Christopher D. Brumwell
    Assistant United States Attorneys
    (212) 637-2466 / 2477

---

"delay of 24 months is 'considerably shorter than that of other cases in which no Sixth Amendment violation has been found.'").